# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

BRENNAN TITLE COMPANY *
*
Plaintiff *
*
v. * Civil No. PJM 07-988
*
RAMONA KELLY, et al. *
*
Defendants *

**MEMORANDUM OPINION**

I.

On or about November 9, 2006, Brennan Title Company ("BTC") conducted a settlement for a real estate transaction in which Ramona J. Kelly purchased property known as 701 Hamilton Street, NW, Washington, DC, financing 100% of the sales price ($578,000) through two mortgages. Early the following week, a BTC employee erroneously sent Kelly a check for the second mortgage proceeds of $113,779.24 rather than applying that amount to the purchase. Kelly did not cash the check or return it to BTC. Instead, she endorsed it to the order of Darrit Douglas, who presented it at an M&T Bank branch.

BTC did not discover its employee's error until early February 2007. At that time, it contacted Kelly by telephone and letter, explained the error, and asked her to return the money. Kelly initially claimed that the money was "invested" in an account at Wachovia Bank, but later revealed that her "friend," Darrit Douglas, had the money.

Douglas indicated that the money had been "invested" in several real estate transactions, but would be returned shortly, which it has not been. There was and is, of course, no

legal basis whatsoever for either Kelly or Douglas to retain the approximately $114,000 that was paid to them by mistake. BTC had no reason to be as solicitous of either Kelly or Douglas as they have been heretofore and it is clear that BTC is entitled to a return of the money as a matter of law.[1]

But there is more. When the promises to return the funds proved to be empty, BTC began to investigate the underlying transaction. The investigation uncovered facts suggesting that Kelly, Douglas and John Taylor, were (and perhaps still are) involved in schemes to obtain funds by purchasing real estate, including the 701 Hamilton Street property, at above market value and obtaining 100% financing. After obtaining inflated appraisals of properties, the Defendants apparently contract to pay the market value to the seller while forwarding the difference between the contract price and the market value to Taylor's company, Jubilee Investments.

The facts surrounding the subject transaction support this inference. The records of Metropolitan Regional Information Systems indicate that the Hamilton Street property that Kelly purchased for $578,000 was originally placed on the market in July 2007 at an asking price of $499,000. After it did not sell for three months, a contract was written at a higher price of $578,000. Thus, the mortgage company has approximately $80,000 at risk if Kelly defaults. The prospect of Kelly's defaulting is high – she has no verifiable employment and a negative net worth. Added to this, on February 7, 2007, just two months after the transaction in the present case, Kelly purchased another property located at 8803 Carpenters Hall Drive in Lorton, Virginia for $695,000. As in the subject transaction, she received 100% financing, and Taylor's company, Jubilee Investments, received $92,000 from the seller.

II.

---

[1] As indicated *infra*, Douglas and the third Defendant, John Taylor, have had a default judgment entered against them. BTC's claim against Kelly wants only a Motion for Summary Judgment for judgment to be entered against her.

On April 18, 2007, BTC filed a Complaint alleging a pattern of racketeering activity in violation of 18 U.S.C. § 1962 (R.I.C.O.), breach of contract, unjust enrichment, fraud, and conspiracy naming Kelly, Douglas, and Taylor. The next day it filed a "Motion for Prejudgment Attachment and Temporary and Preliminary Injunctive Relief and Appointment of a Receiver" requesting prejudgment attachment, a freeze on Defendants' assets, appointment of a receiver, and "immediate discovery."

On April 23, 2007, the Court granted the Motion in part, ordering as follows:

> 1) The Motion for Prejudgment Attachment is GRANTED in Part, only insofar as Plaintiff shall be entitled to a Writ of Attachment upon no more than one parcel of Maryland real property in the name of one or more of Defendants; PROVIDED THAT Plaintiff shall first post a bond in the amount of Sixty-Five Thousand Dollars ($65,000) to cover any costs or damages by reason of the issuance of this Prejudgment Attachment;
>
> 2) Plaintiff is further GRANTED immediate discovery from all Defendants with regard to any other assets that they or anyone on their behalf may be holding at this time . . . .

In addition, on May 4, 2007, the Court ordered all Defendants to show cause at a hearing to be held on July 6, 2007 why a preliminary injunction should not enter.

Kelly appeared at the July 6 hearing but Douglas and Taylor did not. After taking evidence, the Court orally granted a Preliminary Injunction against Kelly, which was confirmed by written order dated July 11. Douglas and Taylor, who prior to the hearing had had defaults entered against them for failure to file responses, did not appear at the hearing. The Court therefore decided at the hearing that Final Judgment should be entered against them for compensatory and punitive damages, a separate written order being entered on July 12, 2007. Finally, the Court granted BTC's request for appointment of a receiver as to Douglas and Taylor's property, and by Order dated July 12, 2007, appointed John T. Brennan, Esquire, as the receiver, to serve without bond with authority

to take possession of Douglas and Taylor's property to satisfy BTC's judgments against them and ordering Douglas and Taylor to deliver control of their assets to the receiver.

III.

Before the Court is BTC's July 19, 2007, Motion for Contempt [Paper No. 36] in which it has requested "a body attachment to bring Douglas and Taylor before the Court to show cause why they should not be held in contempt for failure to comply with the Court's" previous Orders, including its July 12, 2007 Discovery Order requiring the disgorgement of assets. The thrust of BTC's argument is that Douglas and Taylor have done nothing to attempt to satisfy Judgment or otherwise comply with the receivership process established by the Court. As a result, BTC requests the Court to issue a body attachment – in other words, arrest them – and have them brought for a hearing to show cause why they should not be held in contempt.

BTC's request for a body attachment is premature. First, the Court will Order Douglas and Taylor to appear at a hearing to show cause why they should not be held in contempt for failure to comply with the Court's order. Only if Douglas and Taylor fail to show cause (or fail to appear) will the Court consider issuing body attachments.

Accordingly, in the Order accompanying this Opinion, the Court will direct Douglas and Taylor to appear to show cause on a date certain. They will be warned that should they ignore that order or fail to show cause, then the Court may issue a body attachment.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

July 25, 2007